UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COLLENE CORCORAN,

Appellant,

v.

KIM RICHARDSON,

Appellee.

Case No. 20-cv-12322

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

_____/

## OPINION AND ORDER AFFIRMING BANKRUPTCY COURT ORDER

### I. INTRODUCTION

On August 27, 2020, Appellant Collene Corcoran appealed a bankruptcy court order finding $2,214.71 of Appellee Kim Richardson's property exempt under MICH. COMP. LAWS § 600.5451(1)(b).  *See* ECF No. 1.  Corcoran argues the bankruptcy court misinterpreted Michigan law because section 600.5451(1)(b) does not exempt money.  ECF No. 6, PageID.157.  Richardson never filed a Response in Opposition.

Presently before the Court is Corcoran's Appeal of the Bankruptcy Court's Order Denying Trustee's Objection to Debtor's Claim of Exemption [#1].  Upon review of the parties' submissions, the Court concludes that oral argument will not aid in the matter's disposition.  Therefore, the Court elects to resolve the Appellant's

1

appeal on the briefs.  E.D. Mich. L.R. 7.1(f)(2).  For the reasons discussed below, the Court will AFFIRM the bankruptcy court's order.

## II. FACTUAL BACKGROUND

On March 26, 2020, debtor Kim Richardson, a grandmother living with two granddaughters, filed a Chapter Seven bankruptcy petition in the Eastern District of Michigan.  ECF No. 4, PageID.75.  At the time, Richardson had $32.00 on hand, $2,177.71 in a checking account, and $5.00 in a savings account, amounting to $2,214.71 in total.  ECF No. 1, PageID.5–6.  Richardson sought an exemption for that amount under MICH. COMP. LAWS § 600.5451(1)(b), which permits exempting "provisions … for comfortable subsistence of each householder and his or her family for 6 months[,]" from bankruptcy proceedings.  Corcoran objected to the exemption request on May 18, 2020, arguing that section 600.5451(1)(b) does not permit exemptions for cash or funds in a bank account.  ECF No. 4, PageID.99.  On June 1, 2020, Richardson submitted a response to Corcoran's objection.  *Id.* at PageID.106.

The bankruptcy court issued an opinion on August 13, 2020, denying Corcoran's objection.  ECF No. 1, PageID.18.  Applying precedent from *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1738–39 (2020), the court read section 600.5451(1)(b) based on "the ordinary public meaning of the terms" as they existed at the statute's promulgation.  ECF No. 4, PageID.137.  The  court focused on the terms "provisions" and "comfortable substance" as understood in nineteenth

2

century dictionaries. *Id.* at PageID.137–138. Looking at the terms' original meaning, the statute "cannot be read to exclude cash[,]" the bankruptcy court reasoned. *Id.* at 140. It subsequently denied Corcoran's objection. *Id.* at PageID.148.

Corcoran timely appealed the bankruptcy court's decision two weeks later. *See* ECF No. 1. She submitted her brief in support of overruling the decision on October 23, 2020. ECF No. 6, PageID.150. Since then, Corcoran submitted three briefs containing supplemental authority to aid the Court's disposition of this matter, filed on February 25, 2021, July 27, 2021, and December 8, 2021, respectively. *See* ECF Nos. 7–9.

### III. LEGAL STANDARD

"A district court reviewing a bankruptcy court's decision in a 'core proceeding' functions as an appellate court, applying the standards of review normally applied by federal appellate courts." *In re H.J. Scheirich Co.*, 982 F.2d 945, 949 (6th Cir. 1993). The bankruptcy court's factual findings "shall not be set aside unless clearly erroneous." *Id.* at 949. However, a bankruptcy court's conclusions of law are reviewed *de novo*. *In re Holley*, No. 12-13088, 2013 U.S. Dist. LEXIS 29670, at *4 (E.D. Mich. Mar. 4, 2013).

## IV. DISCUSSION

The Bankruptcy Code allows a Chapter Seven "debtor to 'exempt' … certain kinds of property from the estate, enabling [her] to retain those assets post-bankruptcy." *Law v. Siegel*, 134 S. Ct. 1188, 1192 (2014) (quoting 11 U.S.C. § 522(b)(1)). The Code allows debtors to exempt assets under federal exemptions or state-law exemptions. 11 U.S.C. § 522. Debtors may forgo federal exemptions and claim state-law exemptions at their discretion. 11 U.S.C. § 522(b)(3)(A).

Here, the relevant Michigan exemption is MICH. COMP. LAWS 600.5451(1)(b), which allows debtors to exempt "provisions and fuel for comfortable subsistence of each householder and his or her family for 6 months." At issue is what Richardson can exempt under the statute. Because this is a matter of statutory interpretation, the Court will consider the statute's history, interpretation over time, and the key terms' ordinary meanings when read in isolation and together. *See Bostock*, 140 S. Ct. at 1738.

### A. History of Section 600.5451(1)(b)

The contested terms in section 600.5451(1)(b) have a long history stretching over 170 years in Michigan. In 1842, the language "provisions and fuel for the comfortable subsistence" first appeared in Michigan's exemption scheme five years after statehood. 1842 Mich. Pub. Acts 71. Michigan's legislature described the law

as "[a]n act to exempt certain property from execution, or sale for any debt, damages, fine or amercement" including:

> Household and kitchen furniture of each householder not exceeding in value two hundred and fifty dollars; the wearing apparel of every person and family; the library of every individual and family not exceeding in value one hundred and fifty dollars in value; the tools, implements and stock necessary to enable every mechanic to carry on his business, not exceeding in value one hundred and fifty dollars; all spinning wheels and weaving looms … two cows, ten sheep … and five hogs to each householder … a sufficient quantity of hay, grain, feed and roots for sustaining and keeping the livestock hereinbefore severally allowed to each class of persons for six months, and the requisite provisions and fuel for the comfortable subsistence of every family and housekeeper for six months.

*Id.* Michigan's legislature removed the term "requisite" in 1846, but otherwise left the exemption for "provisions and fuel for the comfortable subsistence" of a debtor and household unchanged. 1846 Mich. Pub. Acts 477. The legislature amended the statute again in 1849, and 1861, but the phrase "provisions and fuel for the comfortable subsistence" retained its form. 1849 Mich. Pub. Acts 96; 1861 Mich. Pub. Acts 81.

In 1862, the Michigan Supreme Court opined on the statute to decide whether the exemption for "provisions … for the comfortable subsistence" of a debtor and his household included recently planted crops. *King v. Moore*, 10 Mich. 538, 541–44 (1862). In an evenly split court, two justices ruled that the debtor could exempt the crops, while two other justices disagreed. *Compare King*, 10 Mich. at 543

(Christiancy, J.) ("[C]orn and potatoes so recently planted as to be but just visible above the ground, are wholly incapable of use as food, and in that state can with no propriety be called 'provisions.'") *with King*, 10 Mich. at 545 (Campbell, J.) ("[G]rowing crops of grain, or vegetables, suitable for family consumption, are within the exemption of the statute.").  The question regarding whether recently planted crops can constitute exempted "provisions" remains an open question to this day.

However, the *King* decision is insightful on Richardson's exemption.  As Justice Christiancy explained in the context of animal feed:

> If the statute, in cases where the debtor has not the full amount of the property exempted by this section, had provided an exemption of money or other property for the purpose of enabling him to purchase enough to made [sic] up the deficiency, there might be good reason for holding the feed for the animals exempted, though he had not the animals at the time of the levy; but the statute has adopted no such principle.

*Id.* at 540.  Justice Campbell agreed with Justice Christiancy's conclusion that no exemption for animals should apply when the debtor possessed no animals.  *Id.* at 544–55.  But he disagreed with Justice Christiancy on whether debtors can exempt property not yet fully materialized:

> [W]here a family does not possess a supply for six months, then I think they have a right to look to their growing crops for enough to make up the deficiency.  Such crops are designed for human sustenance, and are frequently the chief reliance of their owners.

*Id.* at 545.  Although Justice Christiancy interpreted "provisions" as property existing at the time of a debtor's judgment, Justice Campbell construed "provisions" to include anything that could become subsistence to the debtor and his household for up to six months.  The Michigan Supreme Court disagreed evenly on what "provisions" meant.  While *King* does not stand for the proposition that MICH. COMP. LAWS § 600.5451(1)(b) includes money, Justice Christiancy's reference to money suggests "provisions" does not include it under a narrow interpretation.

After *King*, Michigan's legislature left the exemption's language "provisions and fuel for the comfortable subsistence" undisturbed during each subsequent amendment.  It was not until 2005 when the Michigan legislature officially codified the phrase under MICH. COMP. LAWS § 600.5451(1)(b), removing "the" from the final rendition.

## B.  Recent Decisions Discussing Section 600.5451(1)(b)

Beginning in 2017, Michigan bankruptcy courts began opining on whether debtors can exempt money under MICH. COMP. LAWS § 600.5451(1)(b).  *See, e.g.*, *In re Barlow*, Case No. 17-48802 (Bankr. E.D. Mich. Aug. 29, 2017); *In re Thibaudeau*, No. 19-21006-dob, 2019 Bankr. LEXIS 3574 (Bankr. E.D. Mich. Nov. 18, 2019); *In re Sustaita*, 631 B.R. 403, 413 (Bankr. W.D. Mich. July 31, 2021).  Corcoron's Appeal appears to be the first on this issue.

In *Barlow*, a debtor sought a $400 exemption in her checking account for food. *In re Barlow*, No. 17-48803, Dkt. No. 15.   The court concluded that while money itself does not constitute "provisions," debtors can exempt money under section 600.5451(1)(b) when used within six months to purchase "provisions."   ECF No. 4, PageID.142.   The court explained:

> While cash is not, technically, "provisions and fuel,' this Court finds that money used to purchase provisions and fuel qualifies under this exemption.   In 2017, people do not store six months of provisions and fuel; they purchase goods on a weekly or monthly basis.   This court finds that the provisions and fuel exemption applies to a *de minimus* amount contained in a checking account, which is most certainly necessary for debtor to buy groceries and pay her utility bills.

*In re Richardson*, 621 B.R. at 418.[1]   Accordingly, *Barlow* read money into the statute while finding that money itself cannot constitute provisions.   *Id.*   In doing so, *Barlow* also acknowledged how debtors do not store fuel for six months either, instead paying utility bills in weekly or monthly cycles.   Money to pay those bills, *Barlow* reasons, must be read into the statute.   *Id.*

The court in *Thibaudeau* departed from *Barlow*'s holding, ruling that section 600.5451(1)(b) does not exempt money to purchase future provisions or fuel.   *See* 2019 Bankr. LEXIS 3574, at *7.   Looking to Justice Christiancy's opinion in *King*, the court compared money to unmatured crops that debtors cannot exempt for later

---

[1] Although this Court could not obtain the *Barlow* transcript, the *In re Richardson* bankruptcy court's opinion and order quoted it.   621 B.R. at 418.

use. *Id.* at *6.  The court also applied the canon of statutory construction *expression unius est exclusion alterius*, observing that Michigan legislators knew how to include "money" in the statute, as they did in MICH. COMP. LAWS § 600.5451(1)(j), but chose not to in section 600.5451(1)(b).  *Id.* at *5.  In conclusion, *Thibaudeau* differentiated the judiciary's role in government from the legislature, whose job is to pass and amend statutes.  *Id.* at *9.

Most recently, a bankruptcy court in the Western District of Michigan analyzed section 600.5451(1)(b), concluding that debtors cannot exempt money.  *In re Sustaita*, 631 B.R. at 416.  The debtor there claimed $200 in a checking account as exempt under the subsection at issue.  *Id.* at 406.  After carefully considering the statute's history, the court reviewed nineteenth century dictionary definitions of the term "provisions" before finding the word unambiguous.  As a result, *Sustaita* reasoned "that a debtor cannot exempt depository accounts or money under MICH. COMP. LAWS § 600.5451(1)(b)."  *Id.* at 415.  The court proceeded to apply the rule against surplusage and the doctrine of *noscitur a sociis* to accord a narrow interpretation of "provisions" within the statutory scheme.  *Id.*

Finally, the bankruptcy court below issued a decision similar to *Barlow* by applying nineteenth century dictionary definitions of the terms "comfortable," "subsistence," and "provisions."  *In re Richardson*, 621 B.R. at 416.  The bankruptcy court determined "nothing in these definitions explicitly excludes cash" from being

provisions. *Id.* The court than weighed how the phrase "comfortable subsistence" effects section 600.5451(1)(b) as a whole, finding it "cannot be read to exclude cash unless one also disregards the term 'comfortable subsistence'" because it "affords a modicum of comfort and security." *Id.* at 416–17. After the bankruptcy court denied Corcoran's objection, she appealed to this Court.

### C. Original Meaning of "provisions and fuel for the comfortable subsistence"

The Court reviews section 600.5451(1)(b) *de novo* before turning to Corcoran's arguments. Courts ascertain the legislature's intent when construing statutes. *Koontz v. Ameritech Services, Inc.*, 466 Mich. 304, 645 N.W.2d 34, 39 (2002). If the statute is clear, then it speaks for itself and judicial construction is unwarranted. *Id.* The Court must therefore discern whether the statute is clear or ambiguous. *See D'Agostini Land Co., LLC v. Dep't of Treasury*, 322 Mich. App. 545, 912 N.W.2d 593, 598 (2018). "A statutory provision is ambiguous only if it irreconcilably conflicts with another provision, or when it is equally susceptible to more than a single meaning." *People v. Fawaz*, 299 Mich. App. 55, 829 N.W.2d 259, 263–64 (2012) (citation omitted). Only where ambiguity exists will courts turn to canons of construction to construe a statute's meaning. *D'Agostini Land Co. LLC*, 912 N.W.2d at 598.

### 1.  Section 600.5451(1)(b) is Ambiguous

First the Court will decide whether section 600.5451(1)(b) is ambiguous. Courts "interpret[] a statute in accord with the ordinary public meaning of its terms at the time of its enactment." *Bostock*, 140 S. Ct. at 1738.  To do this, courts "examin[e] the key statutory terms … before assessing their impact on the case[] at hand" while considering prior precedents. *Id.* at 1738–39.  Then courts consider the key terms in context of the statute.

As a threshold matter, Corcoran argues that dictionaries from the 1950s and 1960's should guide the Court's interpretation here, rather than dictionaries from the nineteenth century.  When possible, courts should use dictionaries from the era of a statute's enactment. *See In re Certified Question from the U.S. Ct. of Appeals for the Ninth Cir.*, 499 Mich. 477, 885 N.W.2d 628, 631 (2016).  Although Michigan's legislature codified section 600.5451(1)(b) in 2005, the language at issue has existed in the state's exemption scheme since 1842.  The Court therefore turns to nineteenth century dictionaries as guides while construing section 600.5451(1)(b)'s key terms.

Nineteenth century dictionaries defined "provisions" in various ways.  For example, an 1842 dictionary described "provisions" as: "food for man; victuals.  As good provisions contribute so much to the health and comfort of man, the law requires that they shall be wholesome[.]" *A Law Dictionary, Adapted to the Constitution and Laws of the United States of America, and of the Several States of*

*the American Union*, 385 (1842).   When used as a noun, Webster's 1828 *An American Dictionary of the English Language* interpreted "provisions" as "stores provided; stock … victuals; food; provender; all manner of eatables for man and beast."   Another dictionary published over twenty years after Michigan's legislature passed its exemption scheme provided the following description for "provision":

> Corn may be deemed embraced by a statute exempting "provisions on hand for family use" from execution.  The provisions furnished a ship, strictly considered, are confined to such articles as enter into the food of subsistence for hands and passengers; while stores is a more general term and may embrace wood and coal.  A bequest of "corn, fodder, meat, and other provisions on hand," includes wine and brandy which the testator had laid in and provided for his own use.

*Dictionary of Terms and Phrases Used American or English Jurisprudence* (1879).

Other dictionary definitions found "provisions" encompassed a broader meaning.  One 1869 dictionary defined provisions as "things provided; preparation; measures taken before-hand; accumulation of stores beforehand" and "measures taken for a future exigency."   John Craig, *Universal English Dictionary* (1869).  Similarly, the singular "provision" meant "the thing or things provided" and "the property which a drawer of a bill of exchange places in the hands of a drawee," *i.e.*, collateral—in Joseph Worcester's *Dictionary of the English Language* (1860).

These definitions indicate "provisions" was susceptible to different interpretations in 1842, making the word ambiguous.  At least one bankruptcy court in Michigan determined "provisions" can have multiple meanings as well.  *See In re*

*Sustaita*, 631 B.R. at 414.  Narrowly construed, it can be food.  *Id.* ("[T]he term could be interpreted more narrowly to mean only a stock or supply of food, victuals, and possibly materials.").  Under that narrow definition, *Sustaita* concluded money for food, victuals, and materials, could not be provisions.  *Id.  Sustaita* also discussed "provisions" being broadly interpreted "to mean any type of preparation undertaken by a debtor to ensure that his household can comfortably subsist for six months."  *Id.* Under a broad definition, the court reasoned money can also be considered "provisions."  *Id.*

The analysis in *Sustaita*, and prior caselaw suggests "provisions" in section 600.5451(1)(b) is ambiguous.  The Michigan Supreme Court in *King* could not agree, in an evenly split decision, on what "provisions" meant.  Subsequent bankruptcy court decisions belabor the point that "provisions"—and section 600.5451(1)(b) in turn—are susceptible to conflicting interpretations.  As *Sustaita* acknowledged, courts' constructions of this statute are "irreconcilable" with each other.  631 B.R. at 411.  Reasonable jurists have debated "provisions" meaning for almost 200 years without arriving at a consensus.  Contrary to *Sustaita*'s reading of "provisions" being unambiguous, section 600.5451(1)(b)'s history suggests otherwise.[2]  *Id.* at 414.

---

[2] The *In re Sustaita* court construed "provisions" in isolation from the rest of the statute, reasoning it "only needs to consider the meaning of the term 'subsistence' if it first determines that the term 'provisions includes depository accounts or money."

But interpreting "provisions" is only the Court's first step in understanding section 600.5451(1)(b)'s meaning. *See Shinholster v. Annapolis Hosp.*, 471 Mich. 540, 685 N.W.2d 275, 279 (2004). The Court must "give effect to every word, phrase, and clause in a statute" to discern legislative intent. *Id.* (citation omitted). "The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended." *Sun Valley Foods Co. v. Ward*, 460 Mich. 230, 596 N.W.2d 119, 123 (1999).

Here, the statute exempts "provisions and fuel for comfortable subsistence of a householder and family for six months." MICH. COMP. LAWS § 600.5451(1)(b). The term "subsistence" was defined as "competent provisions; means of supporting life; that which supplies the means of living; as money, pay, or wages." *An American Dictionary of the English Language* (1828). That definition is supported by Worcester's *A Universal and Critical Dictionary of the English Language* (1846), which defined "subsistence" as "means of support; maintenance; living; livelihood; sustenance; support." Taken in consideration of "6 months" under the statute, section 600.5451(1)(b) could exempt property that supports a debtor and their

---

631 B.R. at 413. While the Court agrees with the grammatical analysis, it disagrees with "provisions" being unambiguous. Because the word is subject to differing interpretations, *Sustaita* misapplied Michigan law by failing to recognize "provisions" as ambiguous, which led the Court to skip interpreting "subsistence" and afford proper deference to the debtor.

household up to six months. To know whether that property can include money, the Court must apply common cannons of construction to interpret the statute because "it is equally susceptible to more then a single meaning." *See Fawaz*, 829 N.W.2d at 264.

### 2.  Construing Section 600.5451(1)(b)

To best construe section 600.5451(1)(b), the Court applies the canon of construction *noscitur a sociis* and Michigan law affording plaintiffs deference to remedial statutes. *See Koontz*, 645 N.W.2d at 42.  The canon *noscitur a sociis*, meaning "a word or phrase is given meaning by its context or setting," provides a holistic inquiry here.  *G.C. Timmis & Co. v. Guardian Alarm Co.*, 468 Mich. 416, 662 N.W.2d 710, 713 (2003).  Recognizing the statute's "[c]ontextual understanding" illustrates what Michigan's legislature intended when it promulgated section 600.5451(1)(b) in 1842.  *See Koontz*, 645 N.W.2d at 42 (quoting *Brown v. Genesee Co. Bd. of Comm'rs (After Remand)*, 464 Mich. 430, 628 N.W.2d 471, 475 (2001)).

Applied here, section 600.5451(1)(b)'s other key terms support a broad interpretation of "provisions."  The language "comfortable subsistence" suggests the legislature wanted debtors and their family to sustain themselves for a period of "6 months."  The word "subsistence" included definitions like "money, pay, or wages" when the legislature promulgated the statute.  And as Justice Campbell expressed in

15

*King*, debtors can exempt property not yet fully materialized.  10 Mich. at 545.  In light of the statute's surrounding terms, the doctrine *noscitur a sociis* indicates Michigan's legislature intended to include money as a provision for debtors "comfortable subsistence."

Interpretating "provisions" broadly also aligns with the legislature's intent when considering "fuel" in section 600.5451(1)(b).  As *Barlow* expressed, Michiganders do not store fuel in their home to provide themselves "comfortable subsistence."  Instead, people pay utility bills with money or credit to heat their homes and fuel their vehicles.  While it is undisputed money is not fuel, money for fuel is a "provision" for a debtor's "comfortable subsistence" that the Michigan legislature likely intended to create in the 1842 exemption scheme.

Additionally, when statutory terms are ambiguous, courts "resort to a preferential or 'dice-loading' rule" that favors the debtor.  *Koontz*, 645 N.W.2d at 42.  To that end, Michigan has a longstanding policy towards construing the state's statutory exemption scheme liberally.  *See, e.g.*, *In re Spradlin*, Bankr. 231 B.R. 254, 258 (Bankr. E.D. Mich. Jan. 29, 1999) (collecting cases); *Morrill v. Seymour*, 3 Mich. 64, 67 (1853) ("The object of the law [governing exemptions] is liberal … it secures to the poor man the means, if he already possesses it, of gaining a comfortable subsistence for himself and family.").  This debtor's preference supports

broadly interpreting section 600.5451(1)(b) as well.  The Court will therefore afford a broad interpretation to section 600.5451(1)(b) that includes money as "provisions."

### D. Application to Corcoran's Appeal

Turning to Corcoran's Appeal, she presents three arguments: (1) the bankruptcy court applied the wrong canons of statutory construction; (2) it rendered the term "provisions" meaningless under the statute; and (3) it misapplied *Bostock*. *Id.* at PageID.158.  The Court addresses each argument in turn.

*First* – The Court finds the bankruptcy court's decision not to apply the rule of statutory construction *expression unius est exclusion*,  meaning the expression of something in the statute implies the exclusion of others, to be correct.[3]  The court in *Thibaudeau* applied the doctrine when it denied a debtor's $28,000 cash exemption under MICH. COMP. LAWS § 600.5451(1)(b), which the debtor allegedly needed to live until the following tax season.   2019 Bankr. LEXIS 3574, at *9.   The *Thibaudeau* court concluded that Michigan's legislature knew how to include the term "money" in the exemption statute because it included the term in MICH. COMP.

---

[3] By requesting the Court apply a different canon of statutory construction, Corcoran suggests that section 600.5451(1)(b) is ambiguous. *See D'Agostini Land Co., LLC*, 912 N.W.2d at 554–55 ("Only when ambiguity exists does the Court turn to common canons of construction for aid in construing a statute's meaning.") (citing *People v. Borchard-Ruhland*, 460 Mich. 278, 597 N.W.2d 1, 6 (1999)).

LAWS § 600.5451(1)(j).  *Id.* at *6.  The court then rejected the debtor's exemption request, finding cash cannot be considered "provisions."  *Id.* at *7–*8.

As previously discussed, money can be "provisions" under MICH. COMP. LAWS  § 600.5451(1)(b).   Not  referencing  money  specifically  in  section 600.5451(1)(b) does not mean Michigan's legislature prohibited money as an exemption here.  Instead, "provisions" suggests Michigan's legislature wanted to include a broader catch-all property category intended to support a debtor for a period after bankruptcy.  *Cf. In re Sassak*, 426 B.R. 680, 681–82 (Bankr. E.D. Mich. Mar. 17, 2010) ("A fundamental component of an individual debtor's fresh start in bankruptcy is the debtor's ability to set aside certain property as exempt from the claims of creditors.  Exemption of property, together with the discharge of claims, lets the debtor maintain an appropriate standard of living as he or she goes forward after the bankruptcy case.") (citation omitted).

The state legislature also referenced food and animal "feed" in the original exemption scheme, yet both parties agree that both terms are included under "provisions" as well.  1842 Mich. Pub. Acts 71.  Likewise, the term "money" in section 600.5451(1)(j) does not bar its inclusion under (1)(b)'s "provisions" in the statute.   Section  600.5451(1)(j)  discusses  cash  benefits  and  proceeds  from "insurance compan[ies,]" which makes "money" more appropriate there because

non-monetary forms of property are not at issue.  Thus, the bankruptcy court below did not err in declining to apply the *expression unius est exclusion* doctrine.

*Second* – Next, Corcoran criticizes the bankruptcy court's interpretation of "provisions" as being overly broad.  "[P]rovisions" must be property, Corcoran claims, because section 600.5451(1) specifically references "property" in its text.  ECF No. 6, PageID.163.   The bankruptcy court's definition extends beyond property, she argues, asserting that "provisions" means food, not cash.  *Id.* at PageID.168.  Corcoran concludes that including money in section 600.5451(1)(b)'s definition would render "provisions" meaningless.  *Id.*

This argument falls short in at least two ways.  To start, the bankruptcy court below correctly interpreted subsection 600.5451(1)(b) broadly, as Michigan law expressly demands here.  *See In re Spradlin*, Bankr. 231 B.R. at 258.  Corcoran cites no authority suggesting a narrow reading of Michigan's exemption scheme is required.   Instead, the great weight of Michigan caselaw demands a liberal construction of the section 600.5451(1)(b) because the statute is ambiguous.

Moreover, money is property.  Neither this Court, the bankruptcy court below, or Richardson, suggest "provisions" means non-property items.  And as previously explained, money is property that can support a debtor's "comfortable subsistence" for six months.  Accordingly, the Court finds Corcoran's criticism of the bankruptcy court's interpretation unpersuasive.

*Third* – Corcoran argues the bankruptcy court misapplied *Bostock* by modifying "provisions" when it considered "comfortable subsistence" in its analysis.  To be clear, Corcoran agrees that *Bostock* applies here.  But she disagrees with how the bankruptcy court used "comfortable subsistence" as a modifier.  *Id.* Instead, Corcoran argues MICH. COMP. LAWS § 600.5451(1)(b) lays out a two-part test: first, whether the potentially exempt property is provisions or fuel, and second, does that property provide comfortable subsistence for six months or less.  ECF No. 6, at PageID.169.  The second half of section 600.5451(1)(b), Corcoran states, limits exempted property to providing comfortable subsistence for no more than six months.  *Id.*

Corcoran cites *Wisc. Cent. Ltd. v. United States*, 138 S. Ct. 2067 (2018) in support, where the Supreme Court discussed how an adjective affect's a noun while the Court construed a statute.  The Court explained that the adjective specifies what a noun can include under a statute.  *Id.* at 2071.  Applied here, Corcoran claims "for the comfortable subsistence" is the adjective modifying "provisions" to limit provisions, not expand its meaning.

While adjectives do limit nouns' meanings, how a noun is limited depends on its context.  *See Bostock*, 140 S. Ct. 1738–39 ("examining the key statutory terms" is "just a starting point.  The question isn't just what [the noun] meant, but what [the statute] says about it.").  Applied to "provisions" here, the Court looks to the statute:

debtors may exempt "provisions and fuel for comfortable subsistence of each householder and his or her family for 6 months."   MICH. COMP. LAWS § 600.5451(1)(b).  The term "comfortable subsistence" specifies the type, and "6 months" helps identify the quantity of "provisions" a debtor may exempt.  Food can be included, but so can cooking utensils and toiletries as suggested by the dictionary definitions above.  Purchasing fresh food like produce or other necessities to provide a debtor's family "comfortable subsistence" for six months falls within a liberal construction of the statute as well.  Corcoran's argument that the bankruptcy court misapplied *Bostock* is well taken, but ultimately lacking merit.

Recognizing that "provisions" includes money for a debtor's family's "comfortable subsistence … for 6 months" aligns with the ordinary meaning of the statute when it passed, and the liberal construction demanded under Michigan law. Should Michigan's legislature disagree, it can amend the statute.  Until then, money as "provisions" for a debtor's "comfortable subsistence" can be exempted under section 600.5451(1)(b).  What amount can be exempted is up to bankruptcy courts to decide.  The bankruptcy court's order is AFFIRMED.  Richardson may exempt the $2,214.71.

## V. CONCLUSION

For the reasons discussed herein, the Court will AFFIRM the bankruptcy court's order.

**IT IS SO ORDERED.**


Dated:  March 31, 2022          /s/ Gershwin A. Drain
                                GERSHWIN A. DRAIN
                                UNITED STATES DISTRICT JUDGE



CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 31, 2022, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager